**In re Jason V. OTT, Deceased.**

**Glenn BRAS, Petitioner-Appellant,**

v.

**FIRST UNION TRUST CO. OF KANSAS CITY, Respondent.**

No. WD 32356.

Missouri Court of Appeals,
Western District.

Jan. 19, 1982.

As Modified on Denial of Rehearing
March 2, 1982.

Frank P. Sebree, Sam L. Colville, John F. Murphy, Kansas City, for petitioner-appel-

lant; Shook, Hardy & Bacon, Kansas City, of counsel.

Heywood H. Davis, Christopher J. Anderson, Kansas City, David J. Waxse, Olathe, for respondent; Dietrich, Davis, Dicus, Rowlands & Schmitt, Kansas City, Payne & Jones, Chartered, Olathe, Kan., of counsel.

Before MANFORD, P. J., and DIXON, and NUGENT, JJ.

DIXON, Judge.

This is an appeal from the Circuit Court, Probate Division, denying a claim against a decedent's estate on the ground the claim was barred by § 516.120 RSMo 1978, the limitations statute.

The issue for determination is the application of the limitations statute in the factual context presented.

Glenn Bras gave Jason V. Ott, his son-in-law, $11,250 sometime in July, 1962. On July 31, 1962, an undated memorandum signed by Ott was delivered to Mrs. Glenn Bras. The memo is as follows:

Dear Glenn

This letter is a receipt on a part payment of $7,500.00 and $3,750.00 totaling $11,250.00 for an undivided one-half interest in my share of 280 shrs. and 95⅚ shares of the South Side Bank in Kansas City, Mo.

These shares are placed as security at the Traders National Bank as security in my name, for the total purchase price.

/s/ Jay Ott

Ott made a down payment of $12,000, borrowed $109,000, and purchased the shares of bank stock. The stock was sold by Ott January 8, 1965 with a profit of $92,246.82. Ott died on August 11, 1976.

The claim was originally filed for $31,700 by both Glenn Bras and his wife. On June 8, 1978, the court began a hearing on the claim. An objection to testimony from Glenn Bras based upon § 491.010, the Dead Man's Statute, was interposed, and the hearing was adjourned. Ultimately, the court sustained that objection, and Mrs. Bras filed a disclaimer, and an amended claim for $46,123.41 was filed by Glenn Bras. This claim was for his one-half interest in the proceeds of the stock based on the Ott memorandum. The trial court ruled on the authority of *Minor v. Lillard*, 306 S.W.2d 541 (Mo.1957), that the claim could not be amended in amount after the non-claim provisions of the probate code had expired. That ruling is not contested on this appeal. There is no factual dispute on the claim itself. If the statute does not bar the claim, Glenn Bras is entitled to recover $31,700.

During a hearing on the amended claim, Mrs. Bras testified that in May of 1976, Ott told her that he still owned the shares. She also testified that neither she nor her husband had any knowledge that the shares had been sold until after Ott's death in August of 1976.

The statute, § 516.280 RSMo 1978, relied upon by Bras to toll the statute of limitations is declaratory of the common law which developed to ease the stricture of statutes of limitations where the application of the statutes of limitations would create an injustice. The exceptions to the running of the statute developed on the equity side of the court under general principles of fairness and equity. The circumstances under which the statute would be tolled necessarily rested on the application of general equitable principles to the transaction in question. Understandably, the equitable principles depended in large part upon the relationship between the parties and the nature of the transaction.

The instant case is a classic example of an express trust. The language of the statute, "improper act," must be viewed in the context of the cases declaring the rights and liabilities of the parties with respect to such a trust of personal property. The statute in question has been in our law since Territorial days with little change. Territorial Laws of Missouri, Vol. I Chapter 42, p. 145, subsection 4. In 1872, in *Hunter v. Hunter*, 50 Mo. 445 (1872), and in *Rogers v. Brown*, 61 Mo. 187 (1875), the history of this statute as a codification of the equitable rule is recognized. The case law declaring such rights is

of prime importance in construing the statutes which codify the common law.

■ When a person declares that he holds personal property for another, he becomes an express trustee. *Eldridge v. Logan*, 217 S.W.2d 588 (Mo.App.1949). In that case, deeds were made to various heirs, including one conveying rental property. There, the court in holding that a trust had been established, stated the rule as follows:

It is also the settled law in this state that an express trust as to personal property can be created by parol; and that no particular words are necessary to declare such a trust, and a donor need not in express terms declare himself a trustee for another, all that is necessary is that he must use such language or make such arrangement which unequivocally has that meaning. *Korompilos v. Tompras*, Mo.App., 251 S.W. 80, 81; *Harris Banking Co. v. Miller*, 190 Mo. 640, 665, 89 S.W. 629, 1 L.R.A., N.S., 790. In the last-cited case, it is said 190 Mo. at page 664, 89 S.W. at page 635, 1 L.R.A., N.S., 790: "When a person sui juris, orally or in writing, explicitly or impliedly, declares that he holds personal property for another, he thereby constitutes himself an express trustee."

*Id.* at 590.

Likewise, in *Davies v. Keiser*, 246 S.W. 897, 297 Mo. 1 (1922), the court found an express trust in land and the proceeds of land based on a written contract between the parties and stated the rule for the creation of such trusts as follows:

The magic of set phrases or the use of particular words is not necessary to the creation of a trust. Whether one exists or not is to be determined from the purpose of the parties as indicated by the language employed. If it appears from the whole instrument that it was the intention of the parties that the property was to be dealt with by the party holding the legal title for the benefit in part of another, equity will affix to the transaction the character of a trust and impose upon the party holding the legal title

such duties as are necessary to the performance of same.

*Id.* 246 S.W. at 900.

■ Applying the rule of these cases which are but a few of the many cases finding a trust relationship on similar facts to the instant case, it is clear that the memorandum signed by Jason Ott constitutes an express trust of the bank stock. There was a beneficiary, Glenn Bras. There was a trustee, Jason Ott. There was a trust res sufficiently described so that title could pass to the trustee. There was the retention of title by Bras under circumstances which unequivocally disclosed an intent to hold property for the use of another. In such circumstances, a valid express trust is created. *Atlantic National Bank of Jacksonville, Florida v. St. Louis Union Trust Company*, 357 Mo. 770, 211 S.W.2d 2, 5 (1948). The statute of limitations does not run where a trust exists until the trustee repudiates the trust with notice to the beneficiary. *Eldridge, supra; Davies, supra*; and *Cunningham v. Kinnerk*, 74 S.W.2d 1107 (Mo.App.1934). There can be no doubt that under the evidence in this case, the trustee not only never repudiated the trust and gave notice to the beneficiary that he was doing so, but he actively concealed until May of 1976, the fact that he had repudiated the trust and dealt with the trust property for his own benefit. In such circumstances, that statute of limitations does not bar the beneficiary of the trust, Glenn Bras, from proceeding in this action, for the statute did not begin to run until at the very earliest August of 1976, and whether it is considered to be the five-year statute or the ten-year statute is immaterial since the action was commenced within two years of that date.

Review of this appeal is governed by *Murphy v. Carron*, 536 S.W.2d 30 (Mo.banc 1976), and Rule 73.01. The judgment of the court is based on an erroneous conclusion of law and must be reversed.

The respondent First Union Trust Company also questions the sufficiency of the evidence, contending Mrs. Bras was not competent to testify by reason of the "Dead

Man's Statute." The argument is that without her testimony the claimant Glen Bras did not make a submissible case. It is very likely that Mrs. Bras was not subject to the statute since she had disclaimed any interest in the written contract. The contract on its face did not show any interest in her. She was neither a party to the action nor a party in interest to the contract at the time of trial. *Vosburg v. Smith*, 272 S.W.2d 297, 304 (Mo.App.1954); *Cantrell v. Superior Loan Corp.*, 603 S.W.2d 627, 645 (Mo.App.1980). The issue of disqualification by her prior claim does not need to be reached or decided in the instant case.

The only testimony of Mrs. Bras necessary to support Glen Bras' claim is her identification of her son-in-law's handwriting on the written memorandum. A witness disqualified under § 491.010 RSMo 1978 may still testify to the identification of handwriting if otherwise qualified. *Stephenson v. Stephenson*, 351 Mo. 8, 171 S.W.2d 565, 568 (1943); *Estate of Rogers v. Courier*, 429 S.W.2d 258, 264 (Mo.1968). No objection was raised to her qualifications to permit her as an expert to identify her son-in-law's handwriting. The parties' stipulation admits documentary evidence conclusively proving the trustee's sale of the stock and receipt of the proceeds. The estate offered some evidence but did not offer any evidence of the satisfaction of the trust or the beneficiary's knowledge of the sale.

The judgment of the trial court is reversed with directions to enter a judgment in favor of Glenn Bras in the amount of $31,700.

All concur.